IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERESA BASILE and ADAM HUBER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 10-328 |
| v. ) | |
| ) | Magistrate Judge Lisa Pupo Lenihan |
| TOWNSHIP OF SMITH, BOROUGH OF ) | |
| BURGETTSTOWN, MICHAEL NORTH, ) | ECF Nos. 14 and 17 |
| individually and officially, and AMBER ) | |
| PRICE, individually and officially, ) | |
| ) | |
| Defendants. ) | |

## OPINION

LENIHAN, M.J.

Currently pending before the Court in this civil rights action are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Township of Smith and Michael North (ECF No. 14), and Defendants Borough of Burgettstown and Amber Price (ECF No. 17). Plaintiffs instituted this lawsuit on March 11, 2010, under 42 U.S.C. § 1983, alleging violations of their constitutional rights under the Fourth and Fourteenth Amendments, and state law claims of malicious prosecution and false arrest. Plaintiffs also assert a *Monell* claim against the Defendants Township of Smith and Borough of Burgettstown ("Municipal Defendants"). This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343; supplemental jurisdiction exists over Plaintiff's state law claims under 28 U.S.C. § 1367. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiffs allege the following facts in their Complaint, which the Court accepts as true for purposes of the motions to dismiss. Plaintiffs, Teresa Basile and her son, Adam Huber,

resided in Burgettstown, Washington County, Pennsylvania, at all relevant times. Defendant Township of Smith ("Smith Township") is a political subdivision of the Commonwealth of Pennsylvania and manages and administers law enforcement in the Township through its agent, the Smith Township Police Department. Defendant Borough of Burgettstown ("Burgettstown") is a political subdivision of the Commonwealth of Pennsylvania and manages and administers law enforcement in the Borough through its agent, the Burgettstown Police Department. Defendant Michael North ("North") was at all relevant times employed as a police officer with the Smith Township Police Department. Defendant Amber Price ("Price") was at all relevant times employed as a police officer with the Burgettstown Police Department. (Compl. ¶¶ 1-7, ECF No. 1.)

On March 21, 2008,[1] at approximately 1:30 a.m., Plaintiffs were awakened by the sounds of their house being broken into. Each came to the door of their second-floor bedrooms to assess the situation. (Compl., ¶¶ 12-13.) Defendants North and Price (collectively "Defendant Officers"), carrying flashlights, ran up the stairs towards them. (*Id.* at ¶¶ 13-14.) North shouted at Plaintiffs to "[p]ut your hands in the air." Plaintiff Huber asked if the Defendant Officers had a warrant, but got no response. (*Id.* at ¶¶ 15-17.) Officer North began to search Plaintiff Huber's bedroom, while Officer Price led Plaintiff Basile downstairs to the kitchen. (*Id.* at ¶¶ 17-18.) Officer Price indicated that the search was for drugs. (*Id.* at ¶ 18.) Officer North asked Huber if there were any weapons in the house. Huber told North that a registered handgun was located under Plaintiff Basile's bed. (*Id.* at ¶ 19.)

Plaintiffs were interrogated separately and then handcuffed and taken to the Burgettstown

---

[1] The Complaint alleges that the events occurred in the early morning hours of March 21, 2008. However, the Affidavit of Probable Cause attached to the Criminal Complaint against Teresa Basile states that the search of her residence occurred on March 22, 2010 at approximately 1:15 a.m. The exact date is not material to ruling on the motions to dismiss.

Police Station, allegedly without reading them their *Miranda* rights or, in the case of Plaintiff Huber, being allowed to properly dress or urinate. (*Id.* at ¶ 20.) After further interrogation at the station, Plaintiffs were released and subsequently, on March 24, 2008, a criminal complaint was filed charging both Plaintiffs with violating the following laws:

> One count of Aiding the Consummation of Crime, under 18 Pa. Cons. Stat. § 5017 §§ A;
>
> One count of Disorderly Conduct, under 18 Pa. Con. Stat. § 5503, graded as a summary offense;
>
> One count of Attempted Manufacture, Delivery, or Possession of Controlled Substance with Intent to Manufacture or Deliver, under 18 Pa. Cons. Stat. § 901 §§ A;
>
> Three counts of Conspiracy to Manufacture, Deliver, or Possess a Controlled Substance with Intent to Manufacture or Deliver, under 18 Pa. Cons. Stat. § 903 §§ A2;
>
> One count of Intentionally Possessing a Controlled Substance by a Person not Registered, under 35 Pa. Cons. Stat. § 780-113 §§ A16;
>
> Two counts of Manufacture, Delivery, or Possession of Controlled Substance with Intent to Manufacture or Deliver, under 35 Pa. Cons. Stat. § 780-113 §§ A30; and
>
> Ten counts of Use or Possession of Drug Paraphernalia, under 35 Pa. Cons. Stat. § 780-113 §§ A32, for a total of nineteen charges.

*Id.* at ¶¶ 20-21; Police Criminal Compl., CR-67-08 (ECF No. 19-1).[2] The affidavit of probable cause submitted in support of the criminal complaint indicates that during the execution of a narcotics search warrant at Plaintiffs' residence,[3] the Defendant Officers found drug residue, paraphernalia, and supplies in various locations throughout the residence. (Police Criminal Compl., CR-67-08 (ECF No. 19-1).) In addition, the Defendant Officers also found a properly

---

[2] The record does not contain a copy of the criminal complaint against Adam Huber. However, the civil complaint in the case at bar avers that he was charged with the same offenses as Plaintiff Basile.

[3] The narcotics search warrant was prepared after the arrest on March 21, 2008 of Harold Dean Huber on narcotics charges and issued by the magisterial district judge 27-1-02 on March 22, 2008. (Aff. of

registered handgun in a bedroom shared by Plaintiff Basile and Harold Huber, which the Defendant Officers were alerted to by Plaintiff Adam Huber when asked if there were any weapons in the house. (Compl., ¶19.) The Affidavit of Probable Cause further stated: "This affiant [sic] Officer Price did take Teresa Basile and Adam Huber into custody [sic] as results of the search warrant that was served. Both individuals did have indicia of living in the residence and knowledge of where seized items were keep [sic]." (Police Criminal Compl., CR-67-08 (ECF No. 19-1).)

According to the Complaint, on April 8, 2008, at a hearing concerning the matter of the Plaintiffs' arrests, the Plaintiffs each pleaded guilty to the summary offense of disorderly conduct and paid a fine, and the remaining eighteen charges were withdrawn.[4] (Compl., ¶ 22.) Plaintiffs assert that the only reason they did not contest or appeal the disorderly conduct charges was due to a lack of financial resources to continue legal proceedings. (*Id.* at ¶ 23.)

On March 11, 2010, the Plaintiffs filed this action against North and Price, in both their official and individual capacities, and against their municipal employers, Smith Township and Burgettstown, respectively, alleging violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (Count I). (Compl., ¶¶ 24-36.) In addition, Plaintiffs have brought claims for false arrest and malicious prosecution under Pennsylvania common law against North and Price (Count II) in their individual and official capacities. (Compl., ¶¶ 37-45.) Plaintiffs seek monetary damages in excess of $75,000.00, award of attorneys fees and costs from all

---

Probable Cause attached to Application for Search Warrant, ECF No. 19-1 at 5-6.)

[4] According to the criminal docket for magisterial district judge 27-3-07 regarding docket numbers CR-67-08 (Commonwealth v. Teresa Basile) and CR-68-08 (Commonwealth v. Adam Dean Huber), all of the charges were withdrawn on April 8, 2008, including the charge of disorderly conduct. The Court may consider documents that are public records in ruling on a motion to dismiss without converting it to a motion for summary judgment. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir.1993).

Defendants, and seek awards of punitive damages against North and Price individually.

Defendants Smith Township and North (collectively the "Smith Twp. Defendants") filed a Motion to Dismiss Plaintiffs' Complaint (ECF No. 14) on May 14, 2010, and Defendants Burgettstown and Price (collectively, the "Burgettstown Defendants") filed a similar motion on May 21, 2010 (ECF No. 17). Plaintiffs have filed responses and briefs in opposition to the motions to dismiss. Thus, these motions are now ripe for disposition.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (May 18, 2009) (citing *Twombly, supra*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 550 U.S. at 555, ¶ n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler,* 578 F.3d at 210-11 (citing *Iqbal,* 129 S.Ct. at 1949). Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211 (citing *Iqbal,* 129 S.Ct. at 1950). To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips* at 234-35). In applying this plausibility standard, the reviewing court makes a context-specific inquiry, drawing on its judicial experience and common sense. *Id.* (citing *Iqbal,* 129 S.Ct. at 1950).

Thus, the legal standard remains the same in the following respect—when considering a motion to dismiss under Rule 12(b)(6), district courts must accept as true the factual allegations in the complaint and its attachments, and must draw all reasonable inferences construed in the light most favorable to the plaintiffs. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted). In so doing, a district court may not consider matters extraneous to the pleadings; however, "'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" *Id.*

(quoting *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations omitted); *see also Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192 (3d Cir.1993) (matters of public record)).

## III.   ANALYSIS

### A.   <u>Constitutional Claims Under Section 1983</u>

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.   Therefore, to state a claim for relief under this provision, Plaintiffs must demonstrate both that the Defendants were acting under color of state law and that a constitutional violation was directly caused by the Defendants' conduct.   *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

#### 1.   <u>Defendants North and Price</u>

There is no question, and the parties do not dispute, that Defendants North and Price, as police officers employed by political subdivisions of the Commonwealth of Pennsylvania, were acting under color of state law.  Rather, at issue here is whether sufficient facts have been pled to establish plausible constitutional violations under the Fourth and Fourteenth Amendments to the U.S. Constitution.  The constitutional violations alleged by Plaintiffs involve federal false arrest and malicious prosecution claims.

##### a.   **Federal False Arrest Claim**

A claim for false arrest under Section 1983 originates from the Fourth Amendment

guarantee against unreasonable seizures.[5] *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995) (citing *Barna v. City of Perth Amboy,* 42 F.3d 809, 820 (3d Cir. 1994) (other citations omitted)); *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("The Fourth Amendment prohibits arrest without probable cause.") (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1993)); *Kokinda v. Breiner,* 557 F.Supp. 2d 581, 592 (M.D.Pa. 2008) (citing *Groman, supra*; other citation omitted). Thus, to succeed on their false arrest claim under Section 1983, Plaintiffs must show that the arresting officers, Defendants North and Price, lacked probable cause to arrest them. *Groman,* 47 F.3d at 634; *Kokinda,* 557 F.Supp. 2d at 592 (citation omitted). "'Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti,* 71 F.3d at 482).

In determining whether probable cause existed for an arrest, the court applies an objective standard based on "'the facts available to the officers at the moment of arrest.'" *Barna,* 42 F.3d at 819 (quoting *Beck v. Ohio,* 379 U.S. 89, 96 (1964); *Edwards v. City of Philadelphia*, 860 F.2d 568, 571 n. 2 (3d Cir. 1988)). Moreover, "[e]vidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law." *Id.* (citing *Henry v. United States,* 361 U.S. 98, 102 (1959)). Finally, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Id.* (citing *Edwards,* 860 F.2d at 575-76); *Johnson v. Knorr,* 477 F.3d 75, 84-85 (3d Cir. 2007) (citing *Barna* and *Edwards, supra;* also citing *Wright v. City of Philadelphia,* 409 F.3d 595, 602-04 (3d Cir. 2005)). Where the arrest is made pursuant to a warrant, "a plaintiff may succeed in a § 1983

---

[5] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir. 1997)) (footnote omitted).

Whether probable cause existed for an arrest is generally a question of fact for the jury. *Merkle,* 211 F.3d at 788 (citations omitted). Where, however, the court finds that the evidence, viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding, then the court may conclude that probable cause exists as a matter of law. *Id.* at 788-89 (citation omitted).

In support of their motions to dismiss, the Burgettstown Defendants and Smith Township Defendants submit that Plaintiffs' false arrest claim fails as a matter of law because their guilty pleas to the disorderly conduct charges carry with them an admission of probable cause for arrest. In addition, the Smith Township Defendants submit that so long as probable cause existed as to any single offense that could have been charged under the circumstances, an arrest is deemed to be supported by probable cause. Accordingly, all of the Defendants maintain that Plaintiffs' guilty pleas to the disorderly conduct charge conclusively established that probable cause existed for their arrests.

In opposing Defendants' motions to dismiss, Plaintiffs have alleged that the Defendant Officers arrested them without probable cause, initiated criminal proceedings against them based on a warrant containing false information, and subsequently, filed false statements in the affidavit of probable cause. (Pls.' Br. in Opp'n to Smith Twp. Defs.' Mot. to Dismiss at 6, ECF

---

shall issue, but upon probable cause . . ." U.S. Const. Amendment IV.

No. 20 ("Pls.' Br. Opp'n to Smith Twp."); Pls' Br. in Opp'n to Burgettstown Defs.' Mot. to Dismiss at 7, ECF No. 24 ("Pls.' Br. Opp'n to Burgettstown").)  Plaintiffs further submit that based upon the information available to the Defendant Officers, their true target was Harold Huber, the estranged husband of Plaintiff Basile, who resided at the same property where Plaintiffs also resided.  According to Plaintiffs, the charges filed against them, including the disorderly conduct charge, had absolutely no factual support, and they only pleaded guilty to disorderly conduct to end their criminal proceedings.  Plaintiffs contend, however, that based on *Johnson v. Knorr,* 477 F.3d at 83, they can proceed with their false arrest claim since it involves the "'fabrication of evidence and perversion of our system of justice'".

In reply, the Smith Township Defendants argue that Plaintiffs have failed to plead sufficient facts to establish a lack of probable cause for their arrest, and instead, merely rely upon the conclusory assertion that the disorderly conduct charges "had absolutely no factual support" and that the Defendant Officers' "true target was Harold Huber."   The Smith Township Defendants also take issue with Plaintiffs' failure to cite any authority for the proposition that an arrestee's purported motive for entering a guilty plea creates an exception to the well-established rule that a guilty plea on any offense charged conclusively establishes probably cause for the arrest itself.  Finally, the Smith Defendants contend that Plaintiffs' reliance on *Johnson v. Knorr* in support of their false arrest claim is misplaced, as that case applies, if at all, to the "lack of probable cause" element of a malicious prosecution claim.

As a preliminary matter, the Court notes that the authority cited by Plaintiffs in opposition to the motions to dismiss their §1983 false arrest claim does not support their arguments.  In *Johnson v. Knorr,* the court of appeals' discussion regarding the fabrication of evidence and perversion of the justice system, was made in regard to distinguishing the facts in

that case from those in *Wright, supra,* in determining whether probable cause had been

established in a §1983 malicious prosecution claim, as opposed to a false arrest claim.   The

*Johnson* court concluded that it was not bound by the holding in *Wright,* a case involving both

false arrest and malicious prosecution claims under §1983, which held the "existence of probable

cause with respect to one offense for which the plaintiff was arrested similarly 'disposes of her

malicious prosecution claims with respect to all of the charges brought against her.'"   *Johnson,*

477 F.3d at 82 (quoting *Wright,* 409 F.3d at 604).   In concluding it was not bound by *Wright*, the

*Johnson* court opined that it did not construe *Wright* as establishing broad legal precedent "that

would 'insulate' law enforcement officers from liability for malicious prosecution in all cases in

which they had probable cause for the arrest of the plaintiff on any one charge," where, as in

*Johnson*, plaintiff alleged that the police officer fraudulently fabricated baseless charges against

him.   477 F.3d at 83-84 (citing *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir. 1991)).[6]   In any event,

Plaintiffs fail to explain how or why the court of appeals' holding in *Johnson*  applies to their

§1983 false arrest claim.[7]

Plaintiffs also rely on a number of district court cases which Plaintiffs cite for the

proposition that a law enforcement official who knowingly provides false or incomplete

information may be held liable for false arrest or imprisonment.   *See* Pls.' Br. Opp'n to

Burgettstown Defs. at 12; Pls.' Br. Opp'n to Smith Twp. at 11.   However, after reviewing the

---

[6] Unlike the plaintiff in *Wright*, Johnson alleged that the police officer intentionally misrepresented facts known to be untrue in order to substantiate criminal charges against plaintiff, and therefore, the defendant officer's involvement in both plaintiff's arrest and the initiation of criminal proceedings against him was more extensive and lasted beyond the issuing of the affidavit of probable cause for his arrest.   477 F.3d at 84.

[7] Recently, the continued vitality of *Johnson* was questioned in *Kossler v. Crisanti*, 564 F.3d 181, 194 n.8 (3d Cir.2009) (en banc), where the court of appeals observed that, to the extent that *Wright* and *Johnson* are "in unavoidable conflict," *Wright,* having been decided first, must control.   None of the parties has addressed the whether a conflict exists and/or the effect on the case at bar, and therefore, the Court will refrain from considering it at this juncture.   Should the Plaintiffs wish to rely on *Johnson* in the future,

cited authority, the Court finds that it does not support the proposition for which it is cited, as thecited cases involved the issue of whether a private citizen who knowingly provided false information to police may be held liable for malicious prosecution. Moreover, the Plaintiffs fail to offer any explanation as to how or why these cases are relevant to their case.

The Court turns now to Defendants' first argument. Initially, Defendants argue that by pleading guilty to disorderly conduct, Plaintiffs have admitted that probable cause existed for their arrests. Defendants are correct insofar as they submit that as long as probable cause existed as to any single offense that could have been charged under the circumstances, an arrest is deemed to be supported by probable cause. *Barna,* 42 F.3d at 819; *Edwards,* 860 F.2d at 575-76. However, Defendants have failed to show, as a matter of law, that probable cause existed for Plaintiffs' arrests on the charge of disorderly conduct. Defendants predicate their argument on a rule applied by a number of courts to the effect that a guilty plea or conviction conclusively establishes the existence of probable cause for arrest, and cite in support, *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994),[8] and *Ross v. Donkocik,* 60 F. App'x 409, 410 n. 1 (3d Cir. 2003) (citing

---

they should address the whether *Wright* and *Johnson* are in actual conflict as applied to this case.

[8]The question addressed by the Supreme Court in *Heck* was whether a prisoner, whose conviction was upheld on direct appeal and on collateral review, may challenge the constitutionality of his conviction in a suit for damages under §1983. *Id.* at 478. In rejecting the prisoner's §1983 claims, the *Heck* Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district

*Heck, supra*). However, neither *Heck* nor *Ross* supports Defendants' argument.

In *Ross,* a non-precedential opinion, plaintiff brought an excessive force claim against police officers who arrested him for obstructing the administration of law when he resisted the lawful attempts of the officers to arrest his son. *Id.* at 410. Although the court of appeals was reviewing a grant of summary judgment as to plaintiff's excessive force claim, Defendants in the case at bar cited *Ross* for the court of appeals' comment, *in dicta,* which appeared in a footnote:

> We note that [plaintiff] pleaded guilty to the charge of obstructing the administration of law or governmental function . . . in the Court of Common Pleas of Northumberland County. This guilty plea negates [plaintiff]'s current argument that [the arresting officers] did not have probable cause to arrest him. *See Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

60 F. App'x at 410 n. 1.[9] Moreover, when this Court turns to the pinpoint cite to *Heck* referenced in the footnote quoted above in *Ross*, it does not find any holding, let alone discussion, of the proposition advanced by Defendants here. Rather, this proposition is discussed in footnote 4 located on page 484 of the *Heck* opinion, wherein the majority acknowledges a disagreement with Justice Souter's statement in his concurring opinion in which he contends that the majority's reference to a malicious prosecution claim was an inapt analogy because of the absolute rule that a defendant's conviction dissolved his claim for malicious prosecution because the conviction was regarded as irrebuttable evidence that the prosecution never lacked probable

---

> court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486-87 (footnotes omitted). Because the record in the case at bar is not sufficiently developed, it is unclear whether *Heck* would apply to bar Plaintiffs' §1983 false arrest claim. This issue is best resolved on summary judgment motions after the record is fully developed.

[9] Because the court of appeals was only considering the excessive force claim, the opinion does not discuss any facts or circumstances relating to the false arrest claim.

cause. 512 U.S. at 484 n. 4. The majority opinion, authored by Justice Scalia, disagreed with Justice Souter's conclusion that this absolute rule existed in all jurisdictions. Indeed, Justice Scalia observed that this absolute rule did not exist in all jurisdictions and, in fact, several jurisdictions recognized an exception to the absolute rule in cases involving fraud, perjury, or mistake of law, dating back to the 1800s. *Heck,* 512 U.S. at 484 n. 4 (citations omitted). Justice Scalia further noted that other jurisdictions have held that a conviction provides *prima facie* evidence that probable cause existed, even though the conviction was subsequently reversed. *Id.* Justice Scalia then noted that the Supreme Court had "attempted to 'reconcile the apparent contradiction in the authorities,'" in its prior decision in *Crescent City Live-Stock v. Butchers' Union Slaughter-House Co.,* 120 U.S. 141, 151 (1887), in which the Supreme Court "observ[ed] that the presumption of probable cause arising from a conviction can be rebutted only by showing that the conviction had been obtained by some type of fraud, *ibid.*" *Heck,* 512 U.S. at 484 n. 4 (citing *Crescent City, supra*).

The Smith Township Defendants also cite a number of district court cases in support of their argument.[10] *See Jones v. O'Rourke,* No. 3:06-CV-0738, 2008 U.S. Dist. LEXIS 49917 (M.D.Pa. June 25, 2008); *Leblanc v. County of Lancaster,* Civ. A. No. 09-1685, 2009 U.S. Dist. LEXIS 98220 (E.D.Pa. Oct. 21, 2009); *Shilling v. Bush,* No. 4:05-CV-871, 2007 WL 210802 (M.D.Pa. Jan. 22, 2007); and *Goedicke v. Girty,* Civ. A. No. 08-1422, 2009 U.S. Dist. LEXIS 32437 (W.D.Pa. Apr. 16, 2009). However, as explained below, those cases are distinguishable factually from the case at bar and, in any event, are not binding on this Court.

---

[10]Defendants also cite a Pennsylvania Commonwealth Court case, which does hold that a guilty plea or conviction conclusively establishes probable cause for arrest. *See McGriff v. Vidovich,* 699 A.2d 797, 800 (Pa. Commw. Ct. 1997). However, the district court is not required to follow Pennsylvania law in a §1983 claim filed in federal court. *Hamidian v. Occulto,* 854 F.Supp. 350, 355 (M.D.Pa. 1994) (declining to apply Pennsylvania common law rule in a §1983 malicious prosecution claim). In any event, *McGriff* is distinguishable factually from the case at bar. *See* discussion *infra* at 28-29.

Although many courts subscribe to the general rule that a guilty plea or conviction in the criminal proceeding conclusively establishes the existence of probable cause to arrest and/or prosecute in a subsequent suit for false arrest or malicious prosecution, application of this rule has depended on the particular facts of each case. This is especially true when courts have allowed plaintiffs to rebut the general rule where they have asserted that their convictions (or guilty pleas) were obtained by fraud, perjury, undue influence, or some other corrupt means. *See, e.g. Mosley v. Wilson,* 102 F.3d 85, 91 (3d Cir. 1996) (applying rule to state common law malicious prosecution claim and declining to find plaintiff's conviction, which was overturned on appeal, conclusively established the existence of probable cause where plaintiff alleged and court found undue influences in investigation that led to charges being filed); *Frederick v. Hanna,* Civ. A. No. 05-514, 2006 U.S. Dist. LEXIS 87037, at *30-31 (W.D.Pa. Dec. 1, 2006) (dismissing §1983 malicious prosecution claim where plaintiff did not appeal or withdraw guilty plea, did not assert that his conviction on guilty plea was obtained by fraud, perjury, or other corrupt means, and other evidence showed probable cause existed for his arrest/prosecution).

In addition, some courts have acknowledged the exception for fraud/false statements in a §1983 false arrest claim, even though the plaintiff did not appeal his conviction in the underlying criminal proceeding. *See Roundtree v. City of New York,* 778 F.Supp. 614, 619-20 (E.D.N.Y. 1991) (citing *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) (quoting Restatement (Second) of Torts §667(1)[11] (other citation omitted)) (dismissing §1983 false arrest claim where

---

[11] The text of the Restatement, currently in effect, states:

§ 667. Effect Of Conviction Or Acquittal
(1) The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means.
(2) The acquittal of the accused by a magistrate or trial court is not evidence of lack of probable cause.

plaintiff pleaded guilty to disorderly conduct, did not appeal, and did not "claim that his conviction was 'obtained by fraud, perjury or other corrupt means.'"); *Unger v. Cohen,* 718 F.Supp. 185, 187 (S.D.N.Y. 1989) (allowing plaintiff to maintain his §1983 false arrest claim even though he had pled guilty to disorderly conduct because plaintiff had alleged in his §1983 action that his conviction on guilty plea was invalid).

The district court's discussion in *Unger* is instructive here. In that case, plaintiff conceded that a valid, voluntary guilty plea to a criminal charge would preclude a subsequent §1983 claim based on false arrest.[12] 718 F.Supp. at 187. However, plaintiff argued that his plea was not voluntary, and therefore, the conviction defense was not available in his case. *Id.* The district court agreed with plaintiff that an invalid judgment of conviction would not support the defense. *Id.* (citing *Pouncey v. Ryan,* 396 F.Supp. 2d 126, 127 (D.Conn. 1975) ("*valid* conviction precludes subsequent false arrest suit"); Restatement (Second) of Torts §667(1)). Thus, the district court ruled that even though plaintiff had neither appealed his conviction nor sought collateral relief, he could still rebut the defense by showing that the conviction was invalid, and therefore, the existence of probable cause for his arrest was not conclusively established. *Id.* at 188 (citing *Smith v. Springer,* 859 F.2d 31, 35 (7th Cir. 1988) ("plaintiff may challenge pre-conviction police conduct even though plaintiff was convicted and served sentence"). The *Unger* court went on to explain:

> [I]f plaintiff were denied the opportunity to challenge the validity of his plea in this forum, a false arrest followed by an invalidly obtained plea could go unremedied. *Cf. Haring v. Prosise*, 462 U.S. 306, 318, 103 S.Ct. 2368, 2375, 76 L.Ed.2d 595 (1983) (redetermination of issues, even though raised and decided by state court, may be warranted "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation") (quoting *Montana v. United States*, 440 U.S. 147, 164

Restatement (Second) of Torts, §667(1) (1976).

[12] The district court in *Unger* referred to this rule as the "conviction defense." 718 F.Supp. at 187.

n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979)).

*Id.*

On the other hand, a number of courts have dismissed §1983 false arrest claims relying on the general rule that a guilty plea conclusively establishes the existence of probable cause to arrest. *See, e.g., Shilling,* 2007 WL 210802, at *13; *Jones,* 2008 U.S. Dist. LEXIS 49917, at *33; *Frederick,* 2006 U.S. Dist. LEXIS 87037, at *30-31 (citing *Imbergamo v. Castaldi,* 392 F.Supp. 2d 686, 696 (M.D.Pa. 2005)) (involving both federal and state false arrest and malicious prosecution claims); *Domitrovich v. Borough of Monaca,* No. 2:08cv1094, 2010 WL 3489137, at *5 (W.D.Pa. Sept. 1, 2010).[13]   However, none of these cases involved any allegations or evidence of fraud, perjury, undue influence or other corrupt means in obtaining the conviction. Also, the plaintiff in *Jones* admitted that probable cause existed for his arrest.  The plaintiffs in *Shilling* and *Domitrovich* pled guilty as part of plea agreements in which they admitted the facts supporting the charge.  In addition, the district court in *Frederick* found that probable cause existed to arrest plaintiff on other offenses other than the one to which he pleaded guilty, and plaintiff did not appeal his conviction. 2006 U.S. Dist. LEXIS, at *30 n. 12.

By comparison, in the case at bar, while Plaintiffs aver that they entered guilty pleas to the disorderly conduct charges, they also aver that Defendants falsified the affidavit of probable cause. Therefore, Plaintiffs appear to be contesting the validity of their convictions on those guilty pleas.  But neither the Complaint nor the documents submitted by Plaintiffs from the criminal proceeding provide any other information regarding the circumstances surrounding the

---

[13] The district court in *LeBlanc*  and *Goedicke,* cited by Defendants, also dismissed §1983 false arrest claims.  These cases are distinguishable, however, from the case at bar.  In both cases, the district court held the §1983 false arrest claims were barred by *Heck,* in that a finding in favor of plaintiffs on the false arrest claims (based on the guilty pleas) would imply the invalidity of their state court convictions. *LeBlanc,* 2009 U.S. Dist. LEXIS 98220, at *8-9; *Goedicke,* 2009 U.S. Dist. LEXIS 32437, at *7-8.  To the extent Defendants' reference to these cases suggests that Plaintiffs' §1983 false arrest claim is barred

entry of their guilty pleas, *e.g.*, whether the pleas were entered pursuant to a plea agreement, whether the pleas were entered on advice of counsel, whether the court conducted a colloquy or full hearing on the merits, or whether Plaintiffs attempted to withdraw the pleas or have them expunged or otherwise invalidated. This information is material to determining whether Defendants are entitled to invoke the conviction defense and whether Plaintiffs are entitled to rebut such defense. Moreover, Defendants' argument does not take into consideration Plaintiffs' assertion that the arrest warrant and affidavit contained false statements, thereby implicating the invalidity of the plea and conviction. Thus, because additional facts are needed to determine whether Plaintiffs' guilty pleas conclusively established the existence of probable cause, dismissal of the §1983 false arrest claim, as a matter of law, is not warranted at this time.[14]

This brings the Court to Defendants' other argument, that the Complaint fails to allege sufficient facts to show a plausible §1983 false arrest claim. A review of the Complaint reveals that the allegations in support of Plaintiffs' false arrest claims are mostly conclusory in nature, and thus, must be disregarded in deciding the 12(b)(6) motions. *Fowler,* 578 F.3d at 210-11 (citing *Iqbal*, 129 S.Ct. at 1949). In particular, Plaintiffs allege in paragraph 25 of the Complaint that they were arrested without probable cause, and that Defendants "conspire[ed] to falsifying their affidavit of probable cause in order to obtain the warrant of arrest from the issuing Magistrate."[15] In paragraphs 33 and 34, Plaintiffs allege that the Defendant Officers "either knowingly stated deliberate falsehoods or acted with reckless disregard for the truth and/or omissions that created falsehoods in arresting" them, and that such falsehoods "were material or

---

by *Heck,* as stated above, the record here is not sufficiently developed to apply a *Heck* analysis.

[14] The court was not asked to consider whether probable cause existed to arrest Plaintiffs on the other charges, and thus, the ruling here applies only to the disorderly conduct charge. If it is ultimately determined that probable cause existed to arrest Plaintiffs on any of the other charges, Plaintiffs' federal and state false arrest claims will fail.

[15] As there are no facts pled in support of any conspiracy claim, nor a separately pled cause of action for

necessary to the finding of probable cause." All of these allegations are conclusory and are nothing more than a threadbare recital of the elements of a §1983 false arrest claim.

Perhaps realizing the insufficiency of their Complaint, Plaintiffs attached to their response to the motion to dismiss filed by the Smith Township Defendants a copy of the March 24, 2008 Criminal Complaint and Affidavit of Probable Cause against Teresa Basile, and the Application for Search Warrant and Authorization (ECF No. 19-1), "to assist the District Court in assessing the complaint." (Pls.' Br. Opp'n to Smith Twp. at 10; Pls.' Br. Opp'n to Burgettstown at 11.) However, Plaintiffs do not point to any particular information, or present any argument, to explain how these documents establish a plausible claim for false arrest under §1983. Rather, the affidavit of probable cause attached to the criminal complaint indicates that the arresting officers, Defendants North and Price, provided the following basis for taking Plaintiffs into custody on March 22nd—Plaintiffs were living in the residence where drug residue and paraphernalia were found, and both allegedly had knowledge of where these items were kept. Although Plaintiffs dispute the stated basis for their arrest, to survive a motion to dismiss they must allege *facts* to show (or at least suggest) that the basis provided by the arresting officers' for Plaintiffs' arrest is disputed or did not exist. As noted above, their Complaint does not allege any such facts but contains only the conclusory allegations that they were arrested without probable cause and Defendants conspired to falsify the affidavit of probable cause. Plaintiffs' sole allegation of fact relating to their false arrest claim is that they pled guilty to a disorderly conduct charge. (Compl., ¶22.) However, this factual allegation, without more, tends to suggest that Plaintiffs' §1983 false arrest claim is *not* plausible. Therefore, the Court finds Plaintiffs have failed to plead sufficient facts to demonstrate a plausible §1983 false arrest claim. Accordingly, the Court will grant Defendants' motions to dismiss as to Plaintiffs' §1983 false

conspiracy, the Court does not construe the Complaint to include a conspiracy claim.

arrest claim.

Nonetheless, in a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so. *Phillips,* 515 F.3d at 245; *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). Based on the discussion above, it is conceivable that Plaintiffs could allege sufficient facts to state a plausible §1983 false arrest claim. Therefore, allowing Plaintiffs to amend their Complaint would not be inequitable or futile. Accordingly, the dismissal of Plaintiffs' §1983 false arrest claim will be without prejudice, and Plaintiffs shall be granted leave to amend their Complaint with regard to their §1983 false arrest claim.

### b. Federal Malicious Prosecution Claim

To succeed on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that:

(1)   the defendants initiated a criminal proceeding;
(2)   the criminal proceeding ended in plaintiff's favor;
(3)   the proceeding was initiated without probable cause;
(4)   the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
(5)   the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood,* 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003)).[16] In the case at bar, Plaintiffs allege that they have sufficiently pleaded facts to establish all of the elements of a federal malicious prosecution claim. Defendants dispute, however, that Plaintiffs have established, or can establish, the

---

[16] The elements of a malicious prosecution claim are the same under Pennsylvania law except that the firth element is not required under Pennsylvania law. *Kossler v. Crisanti*, 564 F.3d 181, 186 n. 2 (3d Cir. 2009) (citing *Merkle,* 211 F.3d at 791).

second and fifth elements.[17]  The Court agrees with Defendants that Plaintiffs cannot establish the fifth element of a federal malicious prosecution claim.[18]

The fifth element, unique to a §1983 malicious prosecution claim, requires that there be a "deprivation of liberty consistent with the concept of seizure" within the meaning of the Fourth Amendment as the result of malicious legal proceedings.  *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009); *see also DiBella,* 407 F.3d at 601.  The alleged seizure must occur as a result of the malicious prosecution, and thus, it must occur chronologically after the pressing of charges. *See Penberth v. Krajnak*, No. 3:CV-06-1023, 2008 U.S. Dist LEXIS 13018, at *51-*54 (M.D. Pa. Feb. 21, 2008), *see also Lopez v. Maczko*, No. 07-1382, 2007 U.S. Dist LEXIS 63416, at *11-*12 (E.D. Pa. Aug. 16, 2007).  The court of appeals has narrowed the applicable definition of seizure to when a criminal defendant is subject to either pretrial custody or "some onerous types of pretrial, non-custodial restrictions" such as those on travel out of the jurisdiction. *DiBella*, 407 F.3d at 603; *see also Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3d Cir. 2003) (although it was a close question, court of appeals held that restrictions, which included defendant's arrest and requirement to post a $10,000 bond, prohibition from traveling outside geographic area, requirement to contact pretrial services on a weekly basis, and requirement to attend all court hearings including his trial and arraignment, amounted to a seizure).  Attendance at hearings and other pre-trial proceedings has been held not to constitute a seizure within the meaning of the Fourth Amendment.  *See Penberth*, 2008 U.S. Dist. LEXIS 13018, at *51-*52 n. 22.  Therefore, the "[t]he type of constitutional injury the Fourth Amendment is intended to

---

[17] The Burgettstown Defendants contend that Plaintiffs' cannot establish both the second and fifth elements of the federal malicious prosecution claim, while the Smith Township Defendants argue that Plaintiffs cannot establish the fifth element.

[18] Because the Court can dispose of the federal malicious prosecution claim on the fifth element, it need not reach the Burgettstown Defendants' argument as to the second element.

redress is the deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella*, 407 F.3d at 603 (citing *Gallo,* 161 F.3d at 222).

In the instant matter, Plaintiffs have failed to show that they have suffered a Fourth Amendment seizure as a result of the alleged malicious prosecution against them, and thus, cannot satisfy the fifth element. Plaintiffs argue that they were subject to a Fourth Amendment seizure during the course of their arrest at their home and subsequent detainment and arraignment on criminal charges. Plaintiffs rely heavily on an unpublished, non-precedential, court of appeals opinion, *Graw v. Fantasky*, to broaden the definition of seizure from previous Third Circuit jurisprudence to include pre-trial proceedings and appearance on charges. 68 F. App'x 378, 382-83 (3d Cir. 2003). Plaintiffs then point to a district court case from the Middle District that followed *Graw*, under the premise that despite *Graw* being unpublished, and therefore non-precedential, it was still persuasive since it was an indication of how the panel would rule. *See Roskos v. Sugarloaf Twp.*, 295 F. Supp. 2d 480, 486-87 (M.D. Pa. 2003). This reasoning has since been superseded by the court of appeals' precedential decision in *DiBella*. The *DiBella* court specifically stated that neither it nor any court in the circuit was bound by *Graw*, and that merely having to appear in court to answer charges does not qualify as a Fourth Amendment seizure. 407 F.3d at 603.

Plaintiffs attempt to distinguish *DiBella* from the case at bar by arguing that unlike the plaintiff in *DiBella,* who was never arrested, here they did suffer a Fourth Amendment seizure because they were arrested and taken to the police station. Plaintiffs' argument is unavailing, because as previously noted, a "seizure" for the purposes of a malicious prosecution claim, must occur only as a subsequent aftereffect of an arrest and filing of charges. The arrest alone is not enough in this circuit to constitute a seizure. *See Penberth*, 2008 U.S. Dist LEXIS 13018, at

*51-*54; *see also Lopez*, 2007 U.S. Dist LEXIS 63416, at *11-*12.

Here, Plaintiffs allege only that they were interrogated at the police station *prior* to the initiation of criminal charges, and that *after* the criminal complaint was filed, they were required to attend a preliminary hearing, at which time they entered guilty pleas to disorderly conduct. However, the court of appeals has held that attending court proceedings does not constitute a seizure for purposes of the Fourth Amendment. *DiBella*, 407 F.3d at 603. Plaintiffs' Complaint does not contain allegations of any other restrictions on their liberty following the commencement of the criminal proceeding, nor do Plaintiffs assert in their opposing briefs that other evidence of seizure exists. Therefore, based on *DiBella* and *Gallo,* Court cannot construe these facts as plausibly stating a Fourth Amendment seizure for purposes of a federal malicious prosecution claim. Moreover, it does not appear that Plaintiffs can allege any other facts to establish a seizure as required to show a plausible §1983 malicious prosecution claim.[19] Accordingly, the Court will grant Defendants' motions to dismiss the §1983 malicious prosecution claim with prejudice.

### 2.     Municipal Liability

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Supreme Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of *respondeat*

---

[19]Because Plaintiffs cannot establish the fifth element of their federal malicious prosecution claim as a matter of law, granting them leave to amend the Complaint would be futile. *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.2008) (if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile.")

*superior*. Instead, the Supreme Court concluded that municipalities can only be held liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. This requirement distinguishes the acts of the municipality from acts of employees of the municipality, thereby limiting liability only to instances for which the municipality is actually directly responsible. *Id*.

To establish municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is deemed to have been made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A custom or practice, however, can be found with no official declaration, but by showing a course of conduct so permanent and widespread that it has the force of law. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, the plaintiff must show either an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). So long as this link is not too tenuous, whether the municipality was the proximate cause of the constitutional violation and thus the injury to the plaintiff, is a matter left to the jury. *Id.* at 851 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985)).

The Municipal Defendants argue that because Plaintiffs have failed to establish any constitutional violations, the municipal liability claims against them fail as a matter of law, and

therefore, should be dismissed. In response, Plaintiffs do not directly address this argument, but instead, submit that they "have sufficiently pleaded that it was the policy, practice and custom of the municipal Defendants to permit their officers to file more serious charges, even though the facts did not justify the filing of such charges, a practice any officer, under the present state of law, should know as of 2007, when *Johnson* was decided, was unlawful, if not before that date. The municipal Defendants' failure to train and supervise their officers in this respect, give rise to Plaintiffs' actionable claims in this respect." Pls.' Br. Opp'n to Burgettstown at 5; Pls.' Br. Opp'n to Smith Twp. at 5. However, the Municipal Defendants are not challenging the sufficiency of the factual allegations in the Complaint, but rather, whether, as a matter of law, Plaintiffs' *Monell* claim can survive a motion to dismiss.

Although the Court agrees with the Municipal Defendants that generally, as a matter of law, a *Monell* claim against municipal defendants will not lie where plaintiffs have failed to show they suffered a constitutional violation, *Williams v. Borough of West Chester,* 891 F.2d 458, 467 (3d Cir. 1989) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)), dismissal here of the *Monell* claims on that basis is premature, given this Court's ruling above on Plaintiffs' §1983 false arrest claim. Accordingly, the Municipal Defendants' motions to dismiss Plaintiffs' municipal liability claim will be denied without prejudice.

The Burgettstown Defendants argue, in the alternative, that if the §1983 claims are not dismissed in their entirety, as against Officer Price, then the §1983 claims against Officer Price, in her *official capacity,* should be dismissed. In support, the Burgettstown Defendants submit that official capacity suits are really suits against the municipality which employs the police officer. The Court agrees with the Burgettstown Defendants on this point. The Supreme Court has clearly established that official capacity suits, *i.e.,* suits against municipal officials in their official capacity, should be treated as suits against the municipality. *See Hafer v. Malo,* 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-

66 (1985)).  Moreover, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Graham,* 473 U.S. at 166 (quoting *Monell,* 436 U.S. at 694)).  Thus, the Court will dismiss the §1983 false arrest claim against Officer Price in her official capacity only. Moreover, although the Smith Township Defendants did not raise this argument, the Court's ruling is equally applicable to Officer North, in his official capacity.  Plaintiffs will not be prejudiced in any way by the Court dismissing, *sua sponte,* Plaintiffs' §1983 false arrest claim against Officer North, in his official capacity, as Plaintiffs were aware of this argument in the Burgettstown Defendants' brief and yet failed to provide any argument or authority in opposition.

### B.  Sᴛate Common Law Claims Against Defendants North and Price

#### 1.  False Arrest Under Pennsylvania Law

Under Pennsylvania law, a claim of false arrest is established by showing that the arrest was made without probable cause, or was made by a person without privilege to do so.  *Renk v. City of Pittsburgh,* 641 A.2d 289, 295 n.2 (Pa. 1994).  Defendants submit that Plaintiffs' common law false arrest claim should be dismissed because Plaintiffs cannot show that their arrests were made without probable cause.

The Smith Township Defendants argue that under Pennsylvania law, a guilty plea conclusively establishes probable cause, and therefore, because Plaintiffs pled guilty to at least one of the offenses for which they were arrested, they cannot establish that their arrest lacked probable cause.  In support, the Smith Township Defendants rely on *McGriff v. Vidovich,* 699 A.2d 797, 800 n. 6 (Pa. Commw. Ct. 1997).  The Burgettstown Defendants advance a similar argument in support of dismissal of Plaintiffs' common law false arrest claim.  In response, Plaintiffs refer the parties and this Court to their argument in opposition to the dismissal of their §1983 false arrest claim, that they have alleged that Defendants lacked probable cause for their

false arrest claims, and further argue that Defendants' reference to *McGriff* is "not useful," and this court "should recognize that when there is a fabrication of evidence and perversion of our system of justice, it should not be permitted to continue unimpeded." (Pls.' Br. Opp'n to Burgettstown at 13; Pls.' Br. Opp'n to Smith Twp. at 12.) Plaintiffs submit that the disorderly conduct charges were not even supported by the affidavit of probable cause, as it was completely devoid of any fact or circumstances that could have supported a charge of disorderly conduct.

There is a dearth of precedential jurisprudence in Pennsylvania regarding whether a guilty plea to disorderly conduct conclusively establishes the existence of probable cause for arrest, where no appeal was taken from the conviction and the plaintiff asserts, in a subsequent lawsuit for false arrest, that the conviction was obtained by fraud, perjury, or other corrupt means. This Court was able to find three appellate court cases addressing the conclusive effect to be given to a guilty plea in a subsequent lawsuit based on false arrest; however, unlike the case at bar, none of the plaintiffs in those cases alleged that the conviction (or guilty plea)[20] was obtained by fraud, false statements, undue influence, or some other corrupt means.

In *Smoker v. OHL,* 6 A.2d 810, 811 (Pa. 1939), the plaintiff was arrested for selling certain publications in violation of a local ordinance. He was taken before a magistrate judge, and an immediate hearing was held, at which he was found guilty on the charge for which he was arrested. Plaintiff did not appeal either his conviction or sentence. Subsequently, plaintiff instituted a lawsuit against the magistrate judge and police officer for false arrest and imprisonment under Pennsylvania common law. The Pennsylvania Supreme Court held that because plaintiff had not appealed his conviction, he could not maintain the false

---

[20] For the purpose of evaluating the merits of false arrest and malicious prosecution claims, under Pennsylvania law, a guilty plea has the same force as a conviction. *McGriff,* 699 A.2d at 800 n. 6 (citing *Commw., Dep't of Transp. v. Mitchell,* 535 A.3d 581, 585 (Pa. 1987)). Therefore, the fact that Plaintiffs entered guilty pleas, as opposed to being convicted, on the disorderly conduct charge does not change the

arrest/imprisonment action. *Id.* at 811 (citing *Perry v. Pa. R. Co.,* 41 Pa.Super. 591, 606 (Pa. Super. Ct. 1909). The plaintiff in *Smoker* did not raise, and the court did not consider, any challenge to the validity of the conviction/guilty plea in the subsequent action for false arrest/imprisonment. Inasmuch as the supreme court in *Smoker* does not address what impact allegations of fraud would have on the conclusiveness of the guilty plea, the supreme court's holding is limited to its facts, which are distinguishable from the case at bar.

Significantly, after examining Pennsylvania Supreme Court jurisprudence on the issue, the superior court in *Perry*, upon which the supreme court relied in *Smoker,* opined:

> We find in Pennsylvania no case which holds that a judgment of guilty, by a court having jurisdiction of the offense and the person of the defendant, unreversed and unappealed from, is not conclusive evidence of probable cause for the prosecution, where there is no evidence whatever that the conviction was procured by false or fraudulent testimony or other unlawful means. We have in this case a conviction from which a presumption, at least, arose that there was probable cause for the arrest, and the plaintiff made no attempt to rebut that presumption by proof that the conviction was obtained by false or fraudulent testimony or other unlawful means; it follows, therefore, that the court below was right in instructing the jury that the plaintiff was not entitled to recover damages for his arrest and detention.

41 Pa.Super. 591, 1910 WL 3934, at *8. Thus, although the plaintiff in *Perry* did not attempt to rebut the conclusive presumption of his conviction, the superior court held that a plaintiff could rebut the conclusive effect of the conviction in a subsequent action for false arrest by proving that the conviction was obtained by false or fraudulent testimony or other unlawful means.

The other Pennsylvania case addressing the effect of a guilty plea on the establishment of probable cause to arrest is *McGriff,* which Defendants proffer in support of their motions to dismiss Plaintiffs' common law false arrest claim. In *McGriff,* the issue before the

analysis.

commonwealth court was whether a person, who pleads guilty to the charges for which he was arrested, can maintain a subsequent action for false arrest for lack of probable cause. 699 A.2d at 799. In that case, the police officer, who was assigned to investigate two burglaries at adjoining locations, made an application for an arrest warrant by filing a verified criminal complaint charging plaintiff with various offenses.[21] McGriff claimed that at his preliminary hearing, the victims testified that they had not identified him as the perpetrator to the police officer; nonetheless, the district magistrate held him for trial. McGriff eventually pled guilty to the crimes charged. 699 A.2d at 798. Thereafter, McGriff commenced two actions in state court against the arresting police officer for false arrest. In support of these claims, McGriff argued that without the purportedly false identification by the victims, no probable cause for arrest existed. In addition, McGriff alleged that the police officer intentionally prepared a false, misleading and incomplete arrest warrant and acted incompetently, which led to his false arrest. The trial court dismissed McGriff's claims as frivolous. *Id.*

On appeal, the commonwealth court in *McGriff* affirmed the dismissal of plaintiff's false arrest claims, but held they were not frivolous. *Id.* at 800. In reaching this conclusion, the commonwealth court noted that the issue of whether probable cause is conclusively established by a conviction or guilty plea was addressed recently by the superior court in *Cosmas v. Bloomingdale Brothers, Inc.,* 660 A.2d 83, 89 (Pa. Super. Ct. 1995), a case involving a state common law malicious prosecution claim. The commonwealth court in *McGriff* quoted extensively from the opinion in *Cosmas,* which observed, essentially, that a conviction is conclusive proof of the existence of probable cause, even if later overturned, unless the person convicted can demonstrate that fraud or other under influences were present in the criminal

---

[21] McGriff was charged with burglary, theft and criminal mischief.

proceedings.[22]  *McGriff,* 699 A.2d at 799 (citing *Cosmas,* 660 A.2d at 89 (citing Restatement (Second) of Torts, §667(1) (1976)).  The commonwealth court went on to note that Pennsylvania had essentially adopted the position set forth in §667(1) of the Restatement.  *McGriff*, 699 A.2d at 799 (citing *Cosmas,* 660 A.2d at 89 n. 2).    Thus, the commonwealth court in *McGriff* concluded that although the state of the law in Pennsylvania was somewhat unclear previously, it "now agree[d] with the Superior Court that under the present state of Pennsylvania law, probable cause is conclusively established to exist at the time the arrest was made when there is a guilty plea or conviction."  699 A.2d at 800 (footnote omitted).    Although the commonwealth court applied the rule as stated in the Restatement, even though plaintiff had not appealed his conviction in the underlying proceeding, inexplicably, the *McGriff* court did not address plaintiff's argument, in rebuttal, that the police officer provided a false statement in the arrest warrant.

The above authority leads this Court to conclude that *McGriff* states the general rule in Pennsylvania in a subsequent false arrest action, namely, that a guilty plea or conviction to a summary offense conclusively establishes the existence of probable cause to arrest.  However, it also appears that under Pennsylvania law, even if the plaintiff has not appealed the conviction, he may nonetheless rebut the conclusive presumption by showing that fraud, perjury, undue influence or other corrupt means was employed to obtain the conviction in the criminal proceeding.  *Perry,* 1910 WL 3934 at *8.  *See also MacDonald v. Schroeder,* 63 A. 1024 (Pa. 1906) (holding presumption could be overcome in malicious prosecution claim by showing fraud

---

[22] It appears that the superior court's discussion in *Cosmas,* regarding whether probable cause is conclusively established by a guilty plea or conviction, was *dicta.*  The issue before the Pennsylvania Superior Court in *Cosmas* was whether the magisterial district judge's decision to hold the case over for trial conclusively established probable cause to defeat the malicious prosecution claim.  *Id.* at 86-87.

or other undue influences in criminal proceeding).[23] In addition, there is some authority for applying the fraud exception to §1983 false arrest claims. *See Unger,* 718 F.Supp. at 188; *Roundtree,* 778 F.Supp. at 619-20.

In the case at bar, Plaintiffs have asserted, albeit in a conclusory manner, that the Defendant Officers falsified the affidavit of probable cause and arrest warrant. By so doing, and giving Plaintiffs the benefit of all reasonable inferences, Plaintiffs appear to be attempting to rebut the conclusiveness of their guilty pleas in the criminal proceedings. Therefore, the Court cannot find, at this juncture, that Plaintiffs' common law false arrest claim fails as a matter of law. Nonetheless, as discussed above with regard to Plaintiffs' §1983 false arrest claim, Plaintiffs have failed to plead sufficient facts under *Twombly* to state a claim for false arrest. However, since Plaintiffs may be able to plead sufficient facts to show a plausible common law claim for false arrest, the Court grant Defendants' motions to dismiss as to the common law false arrest claim without prejudice, and will allow Plaintiffs to file an amended complaint to plead sufficient facts in support of this claim.

### 2.    Malicious Prosecution Under Pennsylvania Law

Defendants also seek to dismiss Plaintiffs' malicious prosecution claim under Pennsylvania common law. To maintain a claim for malicious prosecution under Pennsylvania law, a plaintiff must prove that (1) defendants initiated a criminal proceeding against the plaintiff; (2) without probable cause; (3) the criminal proceeding terminated favorably to plaintiff; and (4) defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. *Kelley v. General Teamsters Local 249,* 544 A.2d 940, 941 (Pa. 1988) (citing *Miller v.*

---

[23] Although *MacDonald* involved a malicious prosecution claim, *Cosmas,* upon which the *McGriff* court relied, also involved a malicious prosecution claim and the cases upon which the superior court relied in *Cosmas* also involved malicious prosecution claims. Therefore, this Court predicts the Pennsylvania Supreme Court would apply the same rule to common law false arrest claims. The supreme court's

*Pa. R. Co.,* 89 A.2d 809, 811 (Pa. 1952)); *see also Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir. 1996) (citing *Haefner v. Burkey,* 626 A.2d 519, 521 (Pa. 1993), *disapproval on other grounds noted in Merkle,* 211 F.3d at 782; *Lee v. Mihalich,* 847 F.2d 66, 69-70 (3d Cir. 1988)). The plaintiff bears the burden of proving lack of probable cause in a malicious prosecution action. *Miller,* 89 A.2d at 811 (citation omitted). "Probable cause has been defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Id.* at 811-12 (citation omitted). "Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy." *Kelley,* 544 A.2d at 941.

In support of their motion to dismiss, the Burgettstown Defendants submit that by pleading guilty to the disorderly conduct charges, Plaintiffs are unable to establish that the prior criminal proceedings ended in their favor. Therefore, based on *McGriff,* 699 A.2d at 800 n. 6 (citing Commw., *Dep't of Transp. v. Mitchell,* 535 A.2d 581, 585 (Pa. 1987)), the Burgettstown Defendants argue that Plaintiffs' state law malicious prosecution claim must be dismissed.

Similarly, the Smith Township Defendants argue that the malicious prosecution claim fails because Plaintiffs cannot establish a lack of probable cause in light of their guilty pleas to disorderly conduct. According to the Smith Twp. Defendants, Pennsylvania law holds that when an accused is convicted, he or she cannot establish a lack of probable cause, *Cap v. K-Mart Discount Stores, Inc.,* 515 A.2d 52, 53 (Pa. Super. Ct. 1986), and a guilty plea has the same force as a conviction, *McGriff,* 699 A.2d at 800 n. 6. In addition, the Smith Township Defendants argue that Plaintiffs have failed to establish the favorable termination element, because when the withdrawal of criminal charges is part of a plea agreement or has been brought about by

_____

decision in *MacDonald* is discussed *infra* at 34.

compromise and settlement, the termination is not sufficiently favorable to support a malicious prosecution claim. In support of their argument, the Smith Township Defendants rely on *Kist v. Fatula,* Civ.A. No. 3:2006-67, 2007 WL 2404721, *18 n. 9, (W.D.Pa. Aug. 17, 2007) (citing *Hilfirty,* 91 F.3d at 580 (citing *Alianell v. Hoffman,* 176 A. 207 (Pa. 1935))). For these reasons, the Smith Township Defendants contend Plaintiffs' malicious prosecution claim under Pennsylvania law should be dismissed. In the alternative, the Smith Township Defendants argue that they are entitled to a more definite pleading regarding the disposition of the criminal charges referenced in the Complaint, and request that the Court enter an order allowing Plaintiffs to amend their Complaint to set forth more specific factual allegations relating to the circumstances under which 18 of the criminal charges were withdraw, including whether such charges were withdrawn in connection with a plea agreement.

The Court turns first to Defendants' argument that Plaintiffs cannot establish lack of probable cause. In opposing dismissal of their malicious prosecution claim, Plaintiffs state that the argument they advanced in opposition to the motions to dismiss with regard to their state false arrest claim also holds true for the state law malicious prosecution claim, *i.e.,* Defendants lacked probable cause for their false arrest claims, and further argue that Defendants' reference to *McGriff* is "not useful," and this Court "should recognize that when there is a fabrication of evidence and perversion of our system of justice, it should not be permitted to continue unimpeded." (Pls.' Br. Opp'n to Burgettstown at 13; Pls.' Br. Opp'n to Smith Twp. at 12.) Plaintiffs submit that the disorderly conduct charges were not even supported by the affidavit of probable cause, as it was completely devoid of any fact or circumstances that could have supported a charge of disorderly conduct.

A defendant can defeat a malicious prosecution claim by introducing conclusive evidence

of probable cause, such as evidence of the plaintiff's conviction in the underlying criminal proceeding. *Cosmas,* 660 A.2d at 86. (citations omitted). However, as in the case of a false arrest claim, appellate courts in Pennsylvania and in other states also recognize generally that a malicious prosecution claim will not be defeated by a conviction in the underlying criminal proceeding where the plaintiff is able to show either fraud or some other undue influences at work in the criminal proceedings. *See, id.* at 86 & n.2 (citing cases applying Pennsylvania law and noting that while Pennsylvania law has been less than clear on the issue, Pennsylvania courts appear to subscribe to the rule generally) (citing Restatement (Second) of Torts §667(1) (1976). *See also Heck,* 512 U.S. at 484 n. 4 (listing states that subscribe to this rule, including the noted exception, in malicious prosecution actions).

The Pennsylvania Supreme Court's decision in *MacDonald v. Schroeder,* 63 A. 1024 (Pa. 1906), lends support to Plaintiffs' argument in opposing dismissal of their malicious prosecution claim for lack of probable cause. In determining whether a jury verdict of guilty, which was set aside by the court, followed by a second trial and a not-guilty verdict, constituted conclusive evidence of probable cause for purposes of a subsequent action for malicious prosecution, the supreme court noted the diversity of opinion among text-writers and the courts. *Id.* at 1025. After extensive review of these sources, the supreme court opined:

> The general rule on this question, recognized by text-writers, as well as by the courts of many states, is that a conviction in criminal proceedings is conclusive proof of probable cause unless procured by false or fraudulent testimony or other unlawful means. 19 Am. & Eng. Ency. of Law (2d Ed.) 666. The only difference between the general rule stated and that of *Grohmann v. Kirschman, supra,* is, that the one holds a conviction to be conclusive, while the other only makes it prima facie evidence of probable cause. But in any view taken of the rule, whether it be considered conclusive or only prima facie evidence of probable cause, it is proper on an action of malicious prosecution, to show it had been obtained by false and fraudulent testimony, or other unlawful means.

*Id.* at 1026. Thus, based on *MacDonald,* and the fact that Plaintiffs have pled that the Defendant Officers falsified the affidavit of probable cause, Plaintiffs should not be precluded, at this stage of the litigation, from bringing a state malicious prosecution claim based on a lack of probable to prosecute them on the disorderly conduct charge. However, as the Court found above with regard to the state and federal false arrest claims, the Complaint does not set forth sufficient facts to show a plausible malicious prosecution claim on the element of probable cause, and therefore, Plaintiffs will be allowed to amend their Complaint to so plead.[24]

The second argument advanced by the Smith Twp. Defendants in support of the dismissal of Plaintiffs' malicious prosecution claim is that Plaintiffs have failed to show that the underlying criminal proceedings terminated in their favor. In determining whether a criminal proceeding has terminated in a plaintiff's favor, Pennsylvania courts look to the Restatement (Second) of Torts, which delineates what constitutes termination in plaintiff's favor:

> Criminal proceedings are terminated in favor of the accused by
>
> (a) a discharge by a magistrate at a preliminary hearing, or
> (b) the refusal of a grand jury to indict, or
> (c) the formal abandonment of the proceedings by the public prosecutor, or
> (d) the quashing of an indictment or information, or
> (e) an acquittal, or
> (f) a final order in favor of the accused by a trial or appellate court.

*Haefner,* 626 A.2d at 521 (quoting Restatement (Second) of Torts §659 (1976)). Moreover, in

---

[24] In opposing the motions to dismiss, Plaintiffs have argued that they only agreed to enter guilty pleas to the disorderly conduct charge because they could not afford to defend the other charges. However, Plaintiffs' motivation for entering into a compromise with the prosecutor is irrelevant. *Imbergamo,* 392 F.Supp. 2d at 696 (rejecting plaintiff's argument that he only entered guilty plea to disorderly conduct in order to get out of jail, and holding that plaintiff could not now benefit from the termination of the criminal proceedings and assert a claim of innocence which he had previously abandoned) (citing *Junod v. Bader*, 458 A.2d 251, 253 (Pa. Super. Ct. 1983); *Hall v. Soc'y forPrevention of Cruelty to Animals,* 27 Pa. D & C 3d 34, 1983 WL 165 (Pa. Com. Pl. 1983)).

construing the favorable termination element, the supreme court has held that "if the [accused] is discharged after abandonment of the charges by the prosecutor, or the charges are withdrawn by the prosecutor, this is sufficient to satisfy the requisite element of prior favorable termination of the criminal action." *Woodyatt v. Bank of Old York Road,* 182 A.2d 500, 501 (Pa. 1962) (citing Restatement of Torts §660; other citation omitted).  However, where the prosecutor has agreed to withdraw criminal charges pursuant to a compromise with the accused, or through a plea agreement, the supreme court has not considered a termination under those circumstances to be sufficiently favorable to support a malicious prosecution claim.  *Hilfirty,* 91 F.3d at 580 (citing *Alianell,* 176 A. 207).

In the case at bar, the Complaint states only that Plaintiffs pled guilty to disorderly conduct, the other 18 charges were withdrawn, and Plaintiffs each paid a fine.  Compl., ¶22. However, the Complaint does not contain any allegations as to the circumstances surrounding the entry of the guilty pleas, such as whether the pleas were entered pursuant to a compromise or plea agreement, whether it was counseled, whether the magisterial district judge heard testimony or conducted a colloquy at the hearing, and whether Plaintiffs admitted to any of the facts in support of the pleas.  Without this information, the Court cannot ascertain whether Plaintiffs can establish the favorable termination element.  Accordingly, the Court will grant the Smith Twp. Defendants' alternative request for a more definite pleading regarding the disposition of the criminal charges referenced in the Complaint, and will enter an order allowing Plaintiffs to amend their Complaint to set forth more specific factual allegations relating to the circumstances under which 18 of the criminal charges were withdraw, including whether such charges were withdrawn in connection with a plea agreement, and the nature and extent of the testimony at the hearing before the magisterial district judge.

### 3. Immunity Under PSTCA

In addition, Officer Price, in her official capacity, and the Borough of Burgettstown contend that they are entitled to immunity from Plaintiffs' state law claims of false arrest and malicious prosecution under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §8541 *et seq.* ("PSTCA" or the "Act"), and therefore, the state common law claims against Officer Price in her official capacity should be dismissed with prejudice. Plaintiffs have failed to respond to this argument in either their response to Burgettstown Defendants' motion to dismiss or their brief in opposition.

Generally, the PSTCA grants immunity to municipalities from claims for damages on account of any injury to a person or property caused by any act of the municipality, its employee, or any individual. 42 Pa. Cons. Stat. Ann. §8541. Section 8545 of the Act grants the same immunity to employees of the municipality when acting within the scope of their official duties. *Robbins v. Cumberland Cnty. Children & Youth Servs.,* 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002) (citing 42 Pa. Cons. Stat. Ann. §8545). Immunity under the Act is abrogated, with respect to individuals only (including employees), for acts or conduct constituting a crime, actual fraud, actual malice, or willful misconduct. *Id.* at 1252 (citation omitted); 42 Pa. Cons. Stat. Ann. §8542(a)(2).[25] *See also Smith v. City of Chester,* 851 F.Supp. 656, 659 (E.D.Pa. 1994) (citing *Marko v. City of Philadelphia,* 576 A.2d 1193, 1194 (Pa. Commw. Ct. 1990)) (other citations omitted). Thus, "[w]hen 'it is judicially determined that the act of the employee caused the injury and that such act constituted . . . actual malice or willful misconduct,' PSTCA immunity does not

---

[25] The Act also provides for an exception to the grant of immunity and imposes liability where the injury was caused by the negligent acts of the municipality or its employee acting within the scope of his or her office or duties, and the injury occurs as a result of one of following acts: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. Cons. Stat. Ann. §8542(a)(2) & (b). This exception is not implicated here as the allegations in the

apply" to the individual employee. *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F.Supp.

2d 238, 277 (E.D.Pa. 2007) (quoting 42 Pa. Cons. Stat. Ann. §8550).

The Pennsylvania Supreme Court has defined "willful misconduct" to mean "that the

actor desired to bring about the result that followed, or at least that he was aware that it was

substantially certain to ensue." *Evans v. Philadelphia Transp. Co.,* 212 A.2d 440, 443 (Pa.

1965); *Robbins,* 802 A.2d at 1252-53 (citing *Evans, supra*). In determining whether the willful

misconduct exception applies, the Pennsylvania Supreme Court has applied a different standard

to the conduct of police officers as opposed to the conduct of other employees. *Brockington v.*

*City of Philadelphia,* 354 F.Supp. 2d 563, 571 (E.D.Pa. 2005) (citing *Renk,* 641 A.2d at 293). In

this regard, the court in *Brockington* explained:

> While "willful misconduct" may be equated with intentional torts
> in the context of conduct by City employees who are not police
> officers, in order to exclude police officers from the protection of
> immunity under the Tort Claims Act, the police officer's "willful
> misconduct" must be established in addition to the elements of an
> intentional tort. [*Renk*, 537 Pa.] at 75-77, 641 A.2d 289. The court
> in *Maiale v. Youse* interpreted *Renk* to require "not only that the
> police officer intended to commit the acts that he is accused of
> carrying out, but also that the officer understood that the actions he
> intended to take were illegal and chose to take the actions
> anyway." *Maiale v. Youse*, No. Civ. A. 03-5450, 2004 WL
> 1925004, at *11, 2004 U.S. Dist. LEXIS 17442, at *36 (E.D.Pa.
> Aug.27, 2004). Therefore, in order to demonstrate that the Tort
> Claims Act does not protect [the police officer] in the present case,
> [plaintiff] must demonstrate that there is a material issue of fact as
> to whether [the officer]'s actions constituted "willful misconduct"
> for each of the alleged torts.

354 F.Supp. 2d at 571. Thus, with regard to the plaintiff's false arrest claim, the court in

*Brockington* ruled that the plaintiff was required to show that the police officer "'intentionally

arrested [a person] knowing that he lacked probable cause to do so.'" *Id.* at 571-72 (citing *Renk,*

Complaint here do not involve any of the 8 enumerated acts described in §8542(b).

641 A.2d at 293). With regard to the plaintiff's malicious prosecution claim, the district court stated that the plaintiff was required to show that the officer intentionally brought about plaintiff's prosecution knowing that there was no probable cause. *Id.* at 572 (citing *Renk,* 641 A.2d at 293).

In the case at bar, Plaintiffs have alleged in their Complaint that the Defendants arrested them without probable cause and conspired to falsify the affidavit of probable cause in order to obtain the arrest warrant from the issuing magistrate. (Compl., ¶25.) Plaintiffs also allege that Defendants initiated a criminal proceeding against them without probable cause, and by falsifying their affidavit of probable cause. (*Id.* at ¶¶27, 29.) As a result, Plaintiffs allege that Defendants acted maliciously and for purposes other than bringing justifiable charges against Plaintiffs. *Id.* at ¶30.) Plaintiffs further allege that Officers Price and North either knowingly stated deliberate falsehoods or acted with reckless disregard for the truth or omissions that created falsehoods in arresting them, and were material or necessary to the finding of probable cause. (*Id.* at ¶¶33-34.) Overlooking for the moment the conclusory nature of these allegations, it appears that Plaintiffs are attempting to allege intentional conduct on the part of Officers North and Price that constitutes malice and/or willful misconduct. Giving Plaintiffs the benefit of all reasonable inferences, these allegations suggest that Officers Price and North may not be entitled to immunity in their individual capacities. However, until the facts are fully developed, the Court will not rule on the availability of the immunity defense to Officers North and Price, in their individual capacities.

On the other hand, it is clear that Officers North and Price are entitled to immunity under the PSTCA, in their official capacities, as to the state law claims.[26] A judgment against Officers

---

[26] Although the Smith Twp. Defendants did not raise an immunity argument under the PSTCA, the Court's ruling is equally applicable to them. Plaintiffs will not be prejudiced in any way by the Court

Price and North, in their official capacities, would impose liability on their respective municipalities. *See DeBellis v. Kulp,* 166 F.Supp. 2d 255, 278 (E.D.Pa. 2001). Therefore, since the state common law claims against Officers Price and North, in their official capacities, if successful, would impose liability on their respective municipalities, and under §§8541 and 8542(b), municipalities are immune from suit, even for acts of malice or willful misconduct, the municipalities' immunity likewise applies to Defendants' Price and North in their official capacities. Accordingly, the state common law claims of false arrest and malicious prosecution against Officers Price and North, in their official capacities, will be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part the Defendants' Motions to Dismiss. Defendants' Motions to Dismiss will be granted with prejudice as to the §1983 malicious prosecution claim as to all Defendants. The Court will also dismiss with prejudice the §1983 false arrest claim and state common law claims of false arrest and malicious prosecution as to Officers Price and North, *in their official capacities only.* The Court will dismiss without prejudice Plaintiffs' §1983 false arrest claim and state common law false arrest and malicious prosecution claims against Officers Price and North, in their individual capacities, and will dismiss without prejudice Plaintiffs' §1983 false arrest claim against the Municipal Defendants, and Plaintiffs shall be allowed to file an amended complaint to plead sufficient facts to show plausible claims for relief under *Twombly* as to their §1983 and state false arrest claims and state common law malicious prosecution claim. The motions to dismiss will be denied in all other respects. An appropriate order will follow.

---

applying, *sua sponte,* its ruling on the Burgettstown Defendants' immunity argument to the Smith Twp. Defendants, as Plaintiffs were aware of the immunity argument in the Burgettstown Defendants' brief and yet failed to provide any argument or authority in opposition.

Dated:  November 10, 2010                    BY THE COURT:

_____
LISA PUPO LENIHAN
Chief U. S. Magistrate Judge

cc:      All Counsel of Record
         *Via Electronic Mail*